In the United States District Court
for the Southern District of Ohio
Eastern Division

| | |
|---|---|
| Renae Castillo : | |
| 4390 South Park : | |
| Gahanna, OH 43230 : | Case No. 2:12-cv-650 |
| : | |
| and : | Judge |
| : | |
| Rhonda Sanchez : | Magistrate Judge |
| 1491 East North Broadway : | |
| Columbus, OH 43224, : | Jury demand endorsed hereon |
| : | |
| On behalf of themselves and those : | |
| similarly situated, : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| Morales, Inc. (formerly Moralez, Inc.) : | |
| d/b/a El Vaquero : | |
| c/o Efrain Quezada Murillo, statutory agent : | |
| 3230 Olentangy River Road : | |
| Columbus, OH 43202 : | |
| : | |
| and : | |
| : | |
| John Doe I, an individual : | |
| Name and home address unknown : | |
| 3230 Olentangy River Road : | |
| Columbus, OH 43202 : | |
| : | |
| and : | |
| : | |
| John Doe II, an individual : | |
| Name and home address unknown : | |
| 3230 Olentangy River Road : | |
| Columbus, OH 43202, : | |
| : | |
| Defendants. : | |

**Class Action Complaint**

I. <u>Preliminary Statement</u>

Plaintiffs Renae Castillo and Rhonda Sanchez, on behalf of themselves and all similarly situated individuals, bring this action under 29 U.S.C. § 216(b) and Ohio law against Defendants Morales, Inc., John Doe I, and John Doe II. The action seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly situated individuals with minimum wages and overtime compensation as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*, the Ohio Constitution Article II Section 34(a), and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. § 4111.01, *et. seq.*, and O.R.C. 4113.15.

II. <u>Jurisdiction and Venue</u>

1. This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

2. This Court has supplemental jurisdiction over Plaintiffs' OMFWSA, Ohio law, and Ohio Constitutional claims pursuant to 28 U.S.C. 1367.

3. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

III. <u>Parties</u>

4. Plaintiff Renae Castillo is an individual residing at 4390 South Park, Gahanna, Ohio 43230.

5. Plaintiff Rhonda Sanchez is an individual residing at 1491 East North Broadway, Columbus, Ohio 43224.

6. Plaintiffs have given written consent to bring this action to collect unpaid wages. The consent forms are filed with Plaintiffs' Complaint.

7. Defendant Morales, Inc. ("El Vaquero") is a for-profit corporation registered to do business in Ohio. Morales, Inc. does business as El Vaquero. El Vaquero's principal place of

2

business is 3230 Olentangy River Road, Columbus, Ohio 43202. Morales, Inc. was previously known as Moralez, Inc.

8. Defendant John Doe I is an individual and is sued in his individual capacity. His name and address are unknown at this time.

9. On information and belief, during all relevant times, Defendant Doe I was an owner of El Vaquero.

10. Defendant Doe I directed El Vaquero's pay policy, acted in the interest of El Vaquero and was an "employer" within the meaning of the FLSA and the OMFWSA.

11. Defendant John Doe II is an individual and is sued in his individual capacity. His name and address are unknown at this time.

12. On information and belief, during all relevant times, Defendant Doe II was an owner of El Vaquero.

13. Defendant Doe II directed El Vaquero's pay policy, acted in the interest of El Vaquero and was an "employer" within the meaning of the FLSA and the OMFWSA.

14. Defendants employed Plaintiff Castillo as a restaurant server from approximately May 17, 2010 until June 15, 2012.

15. Defendants employed Plaintiff Sanchez as a restaurant server from approximately July 2011 until June 20, 2012.

16. During all relevant times, Plaintiffs were Defendants' "employees" within the meaning of the FLSA and the OMFWSA.

17. During all relevant times, Defendants were Plaintiffs' "employers" within the meaning of the FLSA and the OMFWSA.

18. Defendants were, and continue to be, "employers" within the meaning of the FLSA and the OMFWSA.

19. During all relevant times, Defendants were, and continue to be an enterprise engaged in "the production of goods for commerce" within the meaning of the FLSA and OMFWSA.

20. Based on information and belief, El Vaquero's quarterly gross revenue exceeds $500,000 per year.

21. Based on information and belief, El Vaquero's quarterly gross revenue exceeds $250,000 per year.

IV. <u>Statement of Facts</u>

    A. Defendants' Business in General

22. El Vaquero principally owns and operates restaurants specializing in Mexican cuisine in the Columbus area, Toledo area, Cincinnati area, and Monroe, Michigan.

23. El Vaquero's Columbus area locations are at issue in this Complaint:

    A. 3230 Olentangy River Road, Columbus, Ohio 43202

    B. 9130 Dublin Road, Powell, Ohio 43065

    C. 1780 Hilliard Rome Road, Hilliard, Ohio 43026

    D. 33 Wootring Street, Delaware, Ohio 43015

    E. 2195 Riverside Drive, Columbus, Ohio 43221

    F. 375 Stoneridge Lane, Gahanna, Ohio 43230

    G. 8715 Sancus Boulevard, Columbus, Ohio 43232

    H. 3580 West Dublin Granville Road, Columbus, Ohio 43235

    I. 3160 Broadway Street, Grover City, Ohio 43123

24. Defendants employ restaurant servers at each location.

25. Servers are primarily responsible for waiting on tables and performing "side work."

26. "Side work" includes cleaning, table set up, and other general, as-needed responsibilities.

27. Plaintiffs worked for Defendants as restaurant servers at the Olentangy River Road location.

B. Defendants' Pay Policies and Practices

28. Defendants' pay practices and policies described herein applied to all servers at Defendants' Columbus area locations, including Plaintiffs.

29. Defendants schedule servers to work for a certain number of hours per day.

30. For example, a server might be scheduled to work from 5:00 PM until 10:00 PM on Thursday.

31. For each hour that a server is scheduled to work, Defendants pay the server a "tipped minimum wage." Tipped minimum wage is half of regular minimum wage. The current tipped minimum wage is $3.85 per hour.

32. Defendants pay servers this tipped minimum wage based on servers' scheduled hours, not the hours a server actually works.

33. Defendants do not keep track of the actual hours servers work. Instead, Defendants simply rely on the schedules to determine servers' wages.

34. Servers regularly work hours in excess of the hours that Defendants schedule them to work. This occurs both before and after a scheduled shift.

35. Servers often arrive at their restaurant before their scheduled shift starts to perform work.

36. In addition, Defendants require servers to continue to wait on tables he or she is currently waiting on until the parties at the tables leave. This policy often results in servers working beyond their scheduled end time.

5

37. Defendants do not pay servers an hourly wage for time worked beyond their regularly scheduled shifts.

38. At times, servers work more than forty hours in a workweek.

39. Defendants do not compensate servers at one and a half times their normal hourly rate for hours worked in excess of forty. Instead, Defendants pay servers at "straight time" for overtime hours.

40. If a server's overtime hours occur outside of the server's scheduled hours, Defendants do not pay servers an hourly wage at all for that time spent working.

41. During the course of their work, servers also earn tips from customers.

42. Defendants do not allow servers to retain all of the tips that they earn.

43. Instead, at the end of a server's shift, Defendants require servers to give Defendants an amount of money based on each server's gross food and drink sales.

44. Defendants require servers to give 3% of the server's total sale amount.

45. Defendants refer to this as "El Vaquero's money."

46. Defendants only allow a server to keep tips to the extent that the tips exceed Defendants' 3% cut.

  A. For example, if the food bill was $100 and the customer left a $5 tip, Defendants would require the server to give Defendants $3.00 (3%). The server would be allowed to keep $2.00 of the $5.00 tip.

  B. Alternatively, if the food bill was $100 and the customer did not leave a tip, Defendants would require the server to give Defendants $3.00 (3%). In this scenario, the server would owe Defendants $3.00 out of his or her own pocket.

47. On information and belief, Defendants retained some or all of the money and tips taken from the servers.

6

48.     On take-out orders, Defendants retain all tips left by customers that pick up food. This is true even when customers specifically designate tips to go to a certain staff member.

49.     In addition to the tips described above, Defendants refer to take-out tips as "El Vaquero's money."

        **C.     General Allegations Regarding Defendants' Illegal Pay Policies and Practices**

50.     Under the Ohio Constitution, Article II § 34(a) and the FLSA, Plaintiffs and those similarly situated are entitled to be paid at least minimum wage for all hours worked.

51.     Ohio's current regular minimum wage is $7.70 per hour.

52.     As described above, Plaintiffs and those similarly situated performed work "off the clock" for which they were not paid.

53.     This "off the clock" work was not *de minimis*.

54.     Pursuant to the Ohio Constitution, Article II § 34a and the FLSA, Defendants may pay tipped employees, such as Plaintiffs and those similarly situated, less than, but not less than half, regular minimum wage if those employees earn tips that make up the difference between the tipped minimum wage and regular minimum wage.

55.     The amount of tips that an employer may use to meet the employer's obligation to pay minimum wages is known as a "tip credit."

56.     Defendants may only claim a tip credit if certain requirements are met:

        A.      The employee is a tipped employee;

        B.      The employee is informed about the provisions of the tip credit; and

        C.      The employee must retain all tips received;

        D.      Except that pooling of tips among tipped employees is permitted.

57.     As a result of Defendants' practice of taking 3% of the food sales of Plaintiffs and those similarly situated, servers were not allowed to retain all of the tips that they received from customers.

58. The servers' tip money was not subject to a valid tip pool among tipped employees because Defendants kept some of the money and used it for their own purposes.

59. Consequently, Defendants were not allowed to take a "tip credit" and pay Plaintiffs and those similarly situated less than regular minimum wage.

60. Even if Defendants could claim the tip credit, Defendants failed to pay servers the lower "tipped minimum wage" because Defendants' did not pay servers for "off the clock" work.

61. Pursuant to the OMFWSA and FLSA, Plaintiffs and similarly situated individuals are entitled to be paid at one and a half times their normal hourly wage for any hours worked in excess of forty in a workweek.

62. From time to time, Plaintiffs and similarly situated individuals worked more than forty hours in a workweek.

63. Defendants only paid servers either straight time or nothing at all for overtime work.

V. <u>Collective Action Allegations</u>

64. Plaintiffs bring this collective action on behalf of themselves and all others similarly situated.

65. Plaintiffs and the class members were all tipped servers and performed the same or similar job duties as one another in that they performed serving duties for Defendants.

66. Plaintiffs and the class members were subject to the same uniform illegal pay practices and policies applicable to all of Defendants' servers.

67. Defendants' illegal pay practices and policies include failing to pay servers at least regular minimum wage for each hour worked, failing to pay at least tipped minimum wage for each hour worked, subjecting workers to an illegal tip pool policy, and failing to compensate servers at one and a half times their regular hourly rate for overtime hours.

68.     The class members are owed minimum wages and overtime wages for the same reasons as the Plaintiffs.

69.     Application of Defendants' illegal pay practices does/did not depend on the personal circumstances of Plaintiffs or those joining this lawsuit. Rather, the same policy or practice which resulted in the non-payment of minimum and overtime wages applies to all class members. Accordingly, the class members are defined as:

> **All tipped employees who worked for Defendants at any of their Columbus area locations (listed in Plaintiffs' Complaint) within the last three years who were not paid at least minimum wage for some hours worked and/or who were not compensated at time-and-one half for some hours worked in excess of forty hours in one or more workweeks.**

70.     Defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice of failing to pay minimum wages and overtime compensation with respect to Plaintiffs and the class members.

71.     Defendants did not act in good faith or reliance upon any of the following in formulating its pay practices: (a) case law, (b) the FLSA, (c) Department of Labor Wage & Hour Opinion Letters or (d) the Code of Federal Regulations.

72.     Defendants have acted willfully in failing to pay Plaintiffs and the class members in accordance with the law.

VI.     <u>Class Action Allegations</u>

73.     Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and (3) of the Federal Rules of Civil Procedure.

74.     Pursuant to the OMFWSA and the Ohio Constitution, Plaintiffs bring their claims on behalf of all persons that Defendants employed at any time from July 19, 2009 to the entry of judgment in this case (the "Class Period").

75.     Plaintiffs bring their claims on behalf of all non-exempt employees within the meaning of the OMFWSA that were not paid at least minimum wage for each hour worked

9

and/or were not paid at one and a half times their normal hourly rate for each hour worked in excess of forty per week ("the Class").

76. The people identified in the Class are so numerous that joinder of all members is impracticable. The precise number of such persons is unknown, and the facts on which that number can be ascertained are presently within the sole control of Defendants. Upon information and belief, there are over two hundred members of the Class during the Class Period.

77. Plaintiffs' claims are typical of the claims of the Class, and a class action is superior to other available methods of fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

78. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

79. Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in wage and hour actions.

80. Plaintiffs have the same interests in this matter as all other members of the Class and Plaintiffs' claims are typical of the Class.

81. There are questions of law and fact common to the Class, which predominate over any questions solely affecting the individual members of the Class. These questions include but are not limited to:

    A.    Whether Defendants employed members of the Class within the meaning of the OMFWSA and Article II, Section 34(a) of the Ohio Constitution;

    B.    Whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class;

10

   C. What proof of hours worked is sufficient where employers fail in their duty to maintain records;

   D. Whether Defendants failed and/or refused to pay the members of the Class at least minimum wages for all hours Defendants suffered or permitted them to work;

   E. Whether Defendants failed and/or refused to pay the members of the Class premium pay for hours worked in excess of forty hours per workweek within the meaning of the OMFWSA;

   F. Whether Defendants are liable for all damages claimed hereunder, including but not limited to, double damages, treble damages, costs, disbursements, and attorney's fees; and

   G. Whether Defendants should be enjoined from such violations of the OMFWSA and Article II, Section 34(a) of the Ohio Constitution.

**VII.** <u>Claims for Relief</u>

**First Count: Ohio Constitution, Article II § 34(a): Failure to Pay Tipped Minimum Wages**

82. All preceding paragraphs are fully re-alleged and incorporated herein.

83. The Ohio Constitution requires employers to pay tipped employees no less than half of the current regular minimum wage rate for each hour actually worked.

84. Defendants paid Plaintiffs half of regular minimum wage only for those hours that Plaintiffs were *scheduled* to work, not the hours Plaintiffs actually worked.

85. Plaintiffs performed a significant amount of "off the clock" work.

86. Plaintiffs were not paid for work done "off the clock."

87. As a result, Defendants have violated the Ohio Constitution, Article II § 34(a).

**Second Count: Fair Labor Standards Act: Failure to Pay Tipped Minimum Wages**

88. All preceding paragraphs are fully re-alleged and incorporated herein.

11

89. By not paying Plaintiffs at least tipped minimum wage for each hour worked, Defendants have violated the FLSA.

**Third Count: Ohio Constitution, Article II § 34(a): Failure to Pay Minimum Wages**

90. All preceding paragraphs are fully re-alleged and incorporated herein.

91. Defendants did not pay Plaintiffs at least regular minimum wage.

92. Plaintiffs earned tips.

93. Defendants claimed a "tip credit" to meet Defendants' obligation to pay Plaintiffs minimum wage.

94. At the same time, Defendants retained some of Plaintiffs' tips.

95. Defendants were not entitled to use the "tip credit" to pay Plaintiffs less than regular minimum wage because Defendants kept some of Plaintiffs' tips.

96. As a result, Defendants have violated the Ohio Constitution, Article II § 34(a).

**Fourth Count: Fair Labor Standards Act: Failure to Pay Minimum Wages**

97. All preceding paragraphs are fully re-alleged and incorporated herein.

98. By not paying Plaintiffs at least regular minimum wage for each hour worked, Defendants have violated the FLSA.

**Fifth Count: Ohio Minimum Fair Wage Standards Act: Failure to Pay Overtime Wages**

99. All preceding paragraphs are fully re-alleged and incorporated herein.

100. Plaintiffs worked more than forty hours in some workweeks.

101. Defendants did not pay Plaintiffs at least one and a half times their normal hourly rate ("overtime rate") for time worked in excess of forty hours per workweek.

102. By not paying Plaintiffs their overtime rate for time worked in excess of forty hours in a workweek, Defendants have violated the OMFWSA.

**Sixth Count: Fair Labor Standards Act: Failure to Pay Overtime Wages**

12

103. All preceding paragraphs are fully re-alleged and incorporated herein.

104. By not paying Plaintiffs their overtime rate for time worked in excess of forty hours in a workweek, Defendants have violated the FLSA.

**Seventh Count: Fair Labor Standards Act: Failure to Inform Employees of Tip Credit**

105. All preceding paragraphs are fully re-alleged and incorporated herein.

106. Defendants did not inform Plaintiffs of the tip credit provisions.

107. By claiming the benefits of the tip credit but not informing Plaintiffs of the tip credit provisions and Defendants' intention to take the tip credit, Defendants have violated the FLSA.

**Eighth Count: Failure to Tender Pay by Regular Payday under Ohio Law (against Defendant El Vaquero only)**

108. All preceding paragraphs are fully re-alleged and incorporated herein.

109. At all relevant times, El Vaquero failed and continues to fail to make wage payments to Plaintiffs, as outlined above, within 30 days of when such payments were due.

110. By failing to make the wage payments within 30 days of when such payments were due, Defendants have violated O.R.C. § 4113.15.

111. Further, by retaining Plaintiffs' tips without agreement from Plaintiffs, Defendants have violated O.R.C. § 4113.15.

**Ninth Count: Ohio Constitution, Article II § 34(a): Failure to Maintain Wage and Hour Records**

112. All preceding paragraphs are fully re-alleged and incorporated herein.

113. Article II, Section 34(a) of the Ohio Constitution requires employers to maintain records for each employee showing that employee's name, address, occupation, pay rate, hours worked for each day worked, and each amount paid to an employee for a period of not less than three years following the last date that the employee was employed.

114. Defendants failed and continue to fail to maintain proper records as mandated by Article II, Section 34(a) of the Ohio Constitution.

115. By failing to create, keep, and preserve proper wage and hour records, Defendants have violated Article II, Section 34(a) of the Ohio Constitution.

**Tenth Count: Declaratory Action Regarding the Constitutionality of the Written Consent Requirement Contained in O.R.C. § 4111.14(K)(2)**

116. All preceding paragraphs are fully re-alleged and incorporated herein.

117. Article II, § 34(a) of the Ohio Constitution allows employees to bring an action for unpaid minimum wages on behalf of themselves and those similarly situated.

118. The Ohio Constitution, Article II § 34(a) mandates that no procedural, pleading, or burden of proof requirements beyond those that apply generally in civil suits may be imposed in order to maintain a lawsuit under that section.

119. Ohio Revised Code § 4111.14(K)(2) forbids an employee from joining a lawsuit for unpaid minimum wages unless they file written consent with the Court.

120. The requirement for written consent is not generally applicable to civil suits.

121. Because O.R.C. § 4111.14(K)(2) seeks to impose an additional procedural or pleading requirement beyond that which is generally applicable in civil suits, it is in contravention to the Ohio Constitution, Article II § 34(a) and is unconstitutionally invalid.

122. The question of O.R.C. § 4111.14(K)(2)'s constitutionality is an actual, justiciable controversy.

123. Plaintiffs seek declaratory judgment regarding the applicability and constitutionality of O.R.C. § 4111.14(K)(2).

VIII. **Prayer for Relief**

**Wherefore,** Plaintiffs and similarly situated individuals are entitled to and pray for the following relief:

14

A. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointment of Plaintiffs and their counsel to represent the Class;

B. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action and appointment of Plaintiffs and their counsel to represent the collective action members;

C. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, Ohio Constitution, Article II § 34(a), and OMFWSA;

D. A declaratory judgment that the written notice requirement contained in O.R.C. § 4111.14(K)(2) is an unconstitutional restriction of rights protected under the Ohio Constitution Article II Section 34(a);

E. An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons in concert with it, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

F. An award of unpaid wages due under the FLSA, Ohio Constitution, Article II § 34(a), the OMFWSA and O.R.C. § 4113.15;

G. An award of liquidated damages as a result of Defendants' failure to pay minimum wages and overtime compensation pursuant to 29 U.S.C. § 216;

H. An award of treble damages, based on Defendants' failure to pay minimum wages, pursuant to the Ohio Constitution, Article II § 34(a);

I. Liquidated damages under O.R.C. § 4113.15;

J. An award of prejudgment and post judgment interest;

K. An award of costs and expenses of this action together with reasonable attorney's fees and expert fees;

15

L.     Such other legal and equitable relief as this Court deems appropriate.

Respectfully submitted,

 /s/ Andrew Biller
Andrew Biller (0081452) (*andrewbilleresq@gmail.com*)
Trial Counsel for Plaintiffs
The Law Firm of Andrew Biller
Easton Town Center
4200 Regent Street, Suite 200
Columbus, OH 43219
(614) 939-9022
Fax (614) 583-8107

### JURY DEMAND

Plaintiffs request a trial by a jury of eight (8) persons.

 /s/ Andrew Biller
Andrew Biller