IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **RENAE CASTILLO**, *et al.*, | : | |
| | : | Case No. 2:12-CV-00650 |
| **Plaintiffs,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| v. | : | |
| | : | Magistrate Judge Abel |
| **MORALES, INC.**, *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter is before the Court on Plaintiff Rhonda Sanchez's[1] Motion for Conditional Collective Action Certification and for Class Action Certification (Doc. 62).  Plaintiff seeks conditional certification of this action as a collective action under the Fair Labor Standards Act ("FLSA"), pursuant to 29 U.S.C. § 216(b), as well as certification as a class action under Fed. R. Civ. P. 23(a) & 23(b)(3).  (Doc. 62 at 1).  Defendants oppose, on the ground that Plaintiff has not shown any common control among the various Defendants sufficient to establish that Plaintiff was similarly situated to other putative class members.  (Doc. 71 at 3).  For the reasons set forth herein, Plaintiff's Motion is **GRANTED**.

### I.     BACKGROUND

Plaintiff brings this action for wage and hour violations under the FLSA and parallel Ohio laws, on behalf of herself and other employees who worked at certain "El Vaquero" Mexican restaurants in and around Columbus, Ohio, from July 18, 2009 until present.  (*Motion*, Doc. 62 at 10).  Plaintiff worked at El Vaquero's Olentangy River Road location, owned and

---

[1] This case originally filed by both Sanchez and Renae Castillo; on March 7, 2014, however, Castillo accepted an offer of judgment in the amount of $42,551.96 plus reasonable attorneys' fees (Doc. 88), and judgment was entered in her favor (Doc. 89).  This action continues with respect to Plaintiff Sanchez.

operated by Defendant Morales, Inc.  (*Id.* at 13).  Each location employs, according to Plaintiff, approximately 20 to 35 workers.  (*Id.*).

Defendants are corporate entities who own the eight restaurant locations at issue in this case.  Each location is advertised to the public solely as "El Vaquero," shares the same website and social media account, uses the same menu, adopts the same hours of operation, and contracts with the same law firm and accountant.  (*Id.* at 14).  Plaintiff further alleges that each location "engaged in the exact same unlawful pay practices and policies."  (*Id.*).  Plaintiff also notes that members of two families – the Morales and the Quezada families – collectively own at least a super-majority interest in each Defendant corporation.  (*Id.*).

Plaintiff's Amended Complaint asserts causes of action under the Ohio Constitution, art. II, § 34a (Counts I, III, IX), the FLSA (Counts II, IV, VI, VII), O.R.C. § 4113.15 (Count VIII), and the Ohio Minimum Wage Fair Standards Act, O.R.C. § 4111.01 *et seq.* ("OMWFSA") (Count V).  (Doc. 37, ¶¶ 109-144).  Plaintiff alleges six wage and hour violations:  (1) failure to pay overtime; (2) failure to inform employees that Defendants were claiming a "tip credit" in lieu of paying full minimum wage; (3) forcing employees to participate in tip pool arrangements; (4) forcing employees to participate in a tip pool in which the owners and managers also participated, with respect to Defendants Morales, Inc., Jalisco, Inc., and/or Cazadores Corp.; (5) forcing employees to work "off the clock" without pay, with respect to Defendant Morales, Inc.; and (6) failure timely to compensate employees as a result of the aforementioned violations.

Plaintiff asks the Court:  (a) conditionally to certify three "collective action subclasses" under the FLSA; (b) to certify four "Ohio-law class action subclasses" under Fed. R. Civ. P. 23(a) & 23(b)(3); (c) to designate Plaintiff's counsel as the class counsel; and (d) to direct the Parties jointly to purpose procedures for notice.  (Doc. 62 at 11).

## II. STANDARD OF REVIEW
### A. FLSA Conditional Certification

The FLSA allows an employee to maintain an action on behalf of herself "and other employees similarly situated." 29 U.S.C. § 216(b). The Act establishes two requirements for a representative FLSA action against an employer: "(1) the plaintiffs must actually be 'similarly situated,' and (2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Snelling v. ATC Healthcare Services, Inc.*, No. 2:11-CV-983, 2012 WL 6042839, at *2 (S.D. Ohio Dec. 4, 2012) (quoting *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir.2006)). The distinct "opt-in" structure of § 216(b) heightens the need for employees to "reciev[e] accurate and timely notice concerning the pendency of the collective action." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The statute therefore vests district courts with "discretion to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Id.* at 169. The decision to conditionally certify a class, and thereby facilitate notice, is thus "within the discretion of the trial court." *Snelling*, 2012 WL 6042839 at *2 (citing *Hoffman-La Roche*, 493 U.S. at 169).

Accordingly, the Sixth Circuit has "implicitly upheld a two-step procedure for determining whether an FLSA case should proceed as a collective action." *Heibel*, 2012 WL 4463771, at *2 (citations omitted). First, at the "initial notice" stage, before discovery has occurred, the Court "determine[s] whether to conditionally certify the collective class and whether notice of the lawsuit should be given to putative class members." *Id.* (quotation omitted). The second stage of the FLSA collective action analysis occurs once discovery is complete, when "the defendant may file a motion to decertify the class if appropriate to do so based on the individualized nature of the plaintiff's claims." *Heibel*, 2012 WL 4463771 at *2 (quotation omitted).

3

Whether Plaintiff's suit may proceed as a collective action pursuant to FLSA at this stage, then, depends on a showing that potential class members are "similarly situated." *Comer*, 454 F.3d at 546. The FLSA does not explicitly define the term "similarly situated," and neither has the Sixth Circuit. *Wade v. Werner Trucking Co.*, 2012 WL 5373311, at *4 (S.D. Ohio Oct. 31, 2012) (citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009)). Although the Sixth Circuit has declined to "create comprehensive criteria for informing the similarly situated analysis," it has held that FLSA plaintiffs may proceed collectively in cases where "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585. "Thus, similarly situated class members under [the] FLSA are those whose causes of action accrued in approximately the same manner as those of the named plaintiffs." *Lewis*, 789 F. Supp. 2d at 868. In short, at this first stage, "the plaintiff must show only that 'his position is similar, not identical to the positions held by the putative class members.'" *Comer*, 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l*, 210 F.R.D. 591, 595 (S.D. Ohio 2001)). The Court considers that issue "using a fairly lenient standard, and typically [the determination] results in conditional certification of a representative class." *Id.* (quotation omitted).

### B.  Rule 23 Class Certification

Rule 23 allows one or more members of a class to sue as representative parties only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a) (referred to by the shorthand of "(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy."). In addition, class certification is appropriate, as relevant here, if "the court finds that the questions of law or fact

4

common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Before certifying a class action, this Court is required to conduct a "rigorous analysis" to determine whether the requirements of Rule 23 have been met. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). In ruling on a motion for class certification, the Court is prohibited from considering the merits of the plaintiff's claims, but the Court may consider evidence outside of the pleadings to determine whether the prerequisites of Rule 23 are met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n. 12 (1978); *see also* 1 Joseph M. McLaughlin, MCLAUGHLIN ON CLASS ACTIONS § 3:12 (6th ed. 2009) ("Consensus is rapidly emerging among the United States Courts of Appeal. The First, Second, Third, Fourth, Fifth, Seventh, Eighth, Tenth and Eleventh Circuits have expressly adopted certification standards that require rigorous factual review and preliminary factual and legal determinations with respect to the requirements of Rule 23 even if those determinations overlap with the merits."). Plaintiff bears the burden of showing that the elements of Rule 23 are met. *See Falcon*, 457 U.S. at 161.

### III.  ANALYSIS

Plaintiff seeks FLSA conditional certification with respect to three subclasses: (1) hourly employees at any of the eight Defendant restaurant locations, who were not paid overtime; (2) tipped employees who worked for Defendants Morales, Inc., Jalisco, Inc., or Cazadores Corp. and participated in a tip pool where an owner, manager, or employer also participated; and (3) hourly server employees who worked for Defendant Morales, Inc. "off the clock" without

compensation.[2]  (Doc. 62 at 1).  At the same time, Plaintiff seeks class action certification under Fed. R. Civ. P. 23(a) & (b)(3) for four Ohio-law subclasses:  (1) hourly employees at any Defendant location who were not paid overtime; (2) tipped server employees who worked at any of the locations, who were required to contribute to a tip pool; (3) tipped employees who worked for Morales, Inc., Jalisco, Inc., or Cazadores Corp. who participated in a tip pool where an owner, manager, or employer also participated; and (4) hourly server employees who worked for Morales, Inc. "off the clock" without compensation.[3]  (*Id.* at 2).

Plaintiff argues that she has met the requirements for FLSA conditional certification because the pay policies and procedures alleged here "occurred uniformly at the restaurant locations" for each subclass; the alleged causes of action all accrued at about the same time and place, in the same manner; the violations affected Plaintiff and the putative collective action members in the same way – in short, that Plaintiff's position and that of the putative collective action members are "identical," in that each suffered "the exact same" violations, unified by common theories of Defendants' statutory violations.  (Doc. 62 at 21).

Plaintiff further alleges that her proposed subclasses meet the requirements of Rule 23 class certification.  She insists that the proposed subclasses are numerous enough, because they have, respectively, 450, 280, 180, and 33 members.  (*Id.* at 24).  Plaintiff excuses the 33-member subclass since, she argues, joinder is still impractical even with this small number, because of the fear of adverse impact at work that the class members face.  (*Id.*).  Plaintiff asserts that she satisfies the commonality requirement, since each subclass of workers was harmed in the same way, and similar questions of law are central to each subclass.  (*Id.* at 26).  Plaintiff also argues that because she has been injured in the same way as each subclass member, in that she is a

---

[2] The relevant time period for the FLSA class is April 8, 2010 to present.  (*Id.*).
[3] The relevant time period for the Rule 23 class is July 18, 2009 to present.  (*Id.*).

6

member of each subclass, she has also satisfied the requirement of typicality. (*Id.* at 26-27). And, lastly, Plaintiff maintains that her interests are aligned with the proposed subclasses, since they challenge the same conduct and seek the same relief, and her counsel is well-qualified to handle the matter. (*Id.* at 27-28). With respect to Rule 23(b)(3)'s requirements, Plaintiff asserts that the proposed class is sufficiently cohesive, since common questions of law and fact allow for a generalized proof of the various issues, and that class action is the superior method of adjudication, given the large number of potential class members and the difficulty of otherwise resolving each individual's claims. (*Id.* at 29-30).

Defendants counter that Plaintiff and the putative class members are not "similarly situated" because they worked at different restaurants, owned by different entities, and the potential class members cannot show that each Defendant entity "has the same, or at least similar, payroll policies and procedures." (Doc. 71 at 3). Defendants explain that the El Vaquero restaurants fit into the "retail or service establishment proviso" of Section 203(r)(1) of the FLSA, which makes clear that certain independent businesses "shall not be deemed to be so operated or controlled as to be other than a separate or distinct enterprise by reason of any arrangement," such as by selling the same goods or using the same brand name. Thus, Defendants conclude, Plaintiff's arguments regarding family ownership by the various Defendants, and the parallel hours of operation, menu, law firm, and accountants do not establish the commonality necessary to invoke FLSA collective action certification because the Defendants are not a "single enterprise" for the purposes of the Act. (Doc. 71 at 3-4).

Plaintiff rejects Defendants' framing of the question of "common control" of policies and procedures; instead, Plaintiff urges that the proper inquiry for the Court is whether the putative class members "have been the 'victims of a single, common policy administered by

7

defendants.'"  (Doc. 77 at 2).  Defendants respond that there are no common policies between the businesses, and that each developed and administered its own payroll policies and procedures.  (Doc. 71 at 5).  Defendants cite to Plaintiff's Exhibit 1, which, they argue, "clearly show[s] that there was no common policies," as each restaurant "stood on its own with respect to its policies and procedures and such policies and procedures were developed and administered by different individuals at each restaurant."  (*Id.*) (citing Doc. 71-1 generally).

With respect to Rule 23 Certification, Defendants insist that Plaintiff has failed to produce evidence sufficient to establish that she is similarly situated to the other putative class members, or that there is a general policy across all of the applicable Defendants.  (Doc. 71 at 10).  Finally, Defendants also take issue with the substantive allegations made by Plaintiff, and counter that they have not in fact violated the FLSA or relevant Ohio law.  (*See id.* at 6-11).

### A.  FLSA Conditional Certification

As this Court has explained, "[s]ome courts hold that a plaintiff can demonstrate that potential class members are 'similarly situated,' for purposes of receiving notice, based solely upon allegations in a complaint of class-wide illegal practices." *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002) (quoting *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996)); s*ee, e.g.*, *Allen v. Marshall Field & Co.*, 93 F.R.D. at 438. "[O]ther courts hold that a plaintiff meets this burden by demonstrating some factual support for the allegations before issuance of notice." *Id.* at 595-56 (quoting *Belcher*, 927 F.Supp. at 251). *See, e.g., Jackson v. New York Telephone Co.*, 163 F.R.D. 429, 431 (S.D.N.Y.1995).  Such a showing, however, need only be "modest," sufficient to establish at least a colorable basis for their claim that a class of "similarly situated" plaintiffs exist. *Severtson*, 137 F.R.D. at 266-67. Courts requiring a factual showing "have considered factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence

8

of a widespread discriminatory plan was submitted." *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (citations omitted).

Based on the evidence submitted to the Court thus far, Plaintiff has met the "fairly lenient standard" necessary to demonstrate that FLSA conditional collective action certification is appropriate under either of the above standards. Plaintiff alleges unlawful pay practices at each of the restaurant locations identified in the Complaint, at about the same time and place, in generally the same manner, which affected Plaintiff and the putative class members in the same way. *Compare Bernal v. Vankar Enterprises, Inc.*, No. SA-07-CA-695-XR, 2008 WL 791963, at *4 (W.D. Tex. Mar. 24, 2008) ("Plaintiff's allegation that participation in the invalid tip pool was mandatory for all Defendants' bartenders is sufficient to meet the lenient standard for conditional certification."). The claims by Plaintiff and the putative class members are indeed "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585. And beyond Plaintiff's allegations, Plaintiff has submitted some evidence identifying potential class members, supported by affidavits, and demonstrating a "colorable basis" that illegal pay practices and procedures are in place at the restaurants the Defendants own and operate. (*See* Doc. 62-4; Doc. 62-5; Doc. 62-6; Doc. 62-10—Doc. 62-16).

### B. Rule 23 Class Certification

Class certification under Fed. R. Civ. P. 23 is a closer question. Rule 23 requires a significantly higher showing than the FLSA, necessitating a "rigorous analysis" and embracing a consideration of evidence outside the pleadings. *Falcon*, 457 U.S. at 161. As the Supreme Court has made clear, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be

prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).

Plaintiff here has established that her claims are common to a numerous-enough group of employees to satisfy Rule 23.  Plaintiff is a member of each subclass, and alleges that each purported violation happened to her.  Because she is challenging the same practices, and seeks the same relief, as the members of each proposed subclass, and because she and her counsel are well-qualified to represent the proposed subclasses, Plaintiff satisfies the elements of adequacy and typicality.  Furthermore, Plaintiff has demonstrated the requisite commonality for her proposed class action.  Plaintiff argues that all members of the subclasses have been affected by the same general policies, and that these policies are the focus of this litigation, thus linking the classes.  In particular, Plaintiff raises factual and legal questions which underlie the claims of each proposed class member, rendering the determination of these questions dispositive of the claims of all other class action plaintiffs.

In support of her claims, Plaintiff has offered significant evidence of the alleged violations.  Plaintiff has provided the Court with substantial documentation of the Defendants' "Weekly Time Sheets," contrasted with the official "Payroll Register" print-outs, showing that employees who worked more than 40 hours in a week were nevertheless paid overtime only on a two-week/80-hour basis.  (*See, e.g.*, Doc. 62-10, Doc. 62-11, Doc. 62-12, Doc. 62-13).  At this stage of the litigation, such evidence is sufficient to support Plaintiff's allegation that this practice violates federal and Ohio overtime law, and that such a claim is common to all of the proposed subclass members.  Similarly, Plaintiff has documented the alleged tip pool violations, by providing evidence of those individuals with ownership interests in the Defendant businesses, coupled with evidence of those individuals participating in tip pools together with non-

10

management employees. (S*ee* Doc. 62-8, Doc. 62-9; Doc. 62-14, Doc. 62-15, Doc. 62-16). Plaintiff has also offered evidence which, combined with her Declaration in support of her claims, could prove violations of federal tip credit law, the Ohio Constitution's tip-retention requirement, and federal and state off-the-clock wage law. (*See, e.g.*, Doc. 45, ¶¶ 69-70; Doc. 62-6, Doc. 62-17 at 6, Doc. 62-18, ¶¶ 9-12).

Finally, Plaintiff has established that her proposed subclasses are numerous enough to support Rule 23 class certification. As the Court of Appeals has explained, there is "no strict numerical test" in order to establish numerosity. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012). Plaintiff must only show that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Often, "a class of 40 or more members is sufficient to meet the numerosity requirement." *Snelling v. ATC Healthcare Servs. Inc.*, No. 2:11-CV-00983, 2012 WL 6042839, at *5 (S.D. Ohio Dec. 4, 2012) (quotation omitted). Plaintiffs' first three proposed subclasses easily meet this threshold. But even so, Plaintiff also raises the valid concern that, "[i]n employment class actions like this one, a class member's potential fear of retaliation is an important consideration in deciding whether joinder is impracticable and thus whether the numerosity requirement is satisfied." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 183 (S.D. Ohio 2012) (citation omitted); *compare Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00-C-5755, 2000 WL 1774091, at *4 (N.D. Ill. Dec. 1, 2000) (finding that plaintiffs satisfied numerosity and taking into consideration that joinder is impracticable due to "[t]he possibility of retaliation" and the "economic dependency involved in the employment relationship [which] is inherently inhibiting" and which is not cured by "the availability of the FLSA action."). Similarly, Plaintiff has sufficiently demonstrated that joinder of all potential plaintiffs in this case would be impracticable, due to both the size of the potential

11

class, and the non-trivial fear of reprisal and posture of economic dependency that would likely repress the willingness of the class members to bring suit individually.

Plaintiff has further shown that her case qualifies for class action status under Fed. R. Civ. P. 23(b)(3). As discussed above, common issues of law and fact predominate in this case, given that each plaintiffs' case turns on questions of law and fact shared by Plaintiff herself, the adjudication of which would decide each potential class member's case. The Court is further satisfied that a class action is the superior method of adjudication, given the size of the class and difficulty of maintaining individual actions, the desirability of a consistent and result for each class plaintiff, and for Defendants, and given that no other competing actions have been filed.

Accordingly, Plaintiff's Motion for Class Action Certification is **GRANTED**.

### C. Plaintiff's Motion for Declaratory Judgment and Intervenor-Defendant State of Ohio's Motion to Dismiss

Plaintiff and Intervenor-Defendant State of Ohio have also filed various motions related to Article II, § 34a of the Ohio Constitution ("§ 34a"). Concurrent with her Motion for Class Certification, Plaintiff filed the pending Motion for Declaratory Judgment (Doc. 60), seeking a judgment from this Court that the written consent requirement of O.R.C. § 4111.14(k)(2) ("§ K2") is not applicable to claims brought directly under § 34a, or that § K2's requirement do not apply in federal court, or that its requirement is in conflict with § 34a and it is thus unconstitutional. (Doc. 60 at 1).

The State of Ohio initially responded that the Court should delay its ruling until after it had ruled on, and only if it had granted, Plaintiff's Motion for Class Certification. (*See* Doc. 70). Two days later, Ohio moved to dismiss Plaintiff's state constitutional challenge. (Doc. 74). The State seeks dismissal of Count X on the grounds that it presents "a novel state law issue that is an issue of first impression," which is "better left for a state court to decide in the first

12

instance." (Doc. 74 at 5). Accordingly, Ohio asks that the Court decline to exercise supplemental jurisdiction over Count X, and to dismiss that count. (*Id.*).

This Motion was fully briefed, but upon the State's filing of its reply in support of its Motion (Doc. 81), Plaintiff moved to strike Ohio's reply, on the grounds that Ohio exceeded the scope of its intervention by arguing that the Court should dismiss Count X, even when Plaintiff has, in her view, offered the Court several alternative avenues to address her claim that would not touch upon the constitutionality of § K2. (Doc. 82). These motions were also fully briefed, and, because the Court has ruled on Plaintiff's Motion for Class Certification, are ripe for review.

Under 28 U.S.C. § 2201, the Court may "declare rights and other legal relations of any interested party seeking such a declaration," so long as the case presents an "actual controversy." In making this determination, the appropriate inquiry is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Detroit, Toledo & Ironton R. Co. v. Consol. Rail Corp.*, 767 F.2d 274, 279 (6th Cir. 1985) (internal quotation omitted). The controversy "must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Hillard v. First Financial Ins. Co.*, 968 F.2d 1214, 1992 WL 164998, at *2 (6th Cir. 1992) (quoting *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989)). A court must consider "whether 'the judgment will serve a useful purpose in clarifying and settling the legal relations in issue,' and whether 'it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 447-48 (6th Cir. 1991) (quoting *Allstate Ins. Co. v.*

13

*Mercier*, 913 F.2d 273, 277 (6th Cir. 1990); *Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)).

Plaintiff seeks a declaratory judgment that: (1) the written consent requirement of § K2 is not applicable to claims brought under § 34a; and/or (2) the written consent requirement does not apply in federal court; and/or (3) the written consent requirement conflicts with § 34a and is thus unconstitutional and invalid. (Doc. 60 at 1). Accordingly, the Court must first consider whether § K2 is applicable to this case at all, since, if the written consent requirement is not relevant to Plaintiff's Amended Complaint, then there is no justiciable controversy as to the constitutionality of § K2, and the Court will not entertain the question of its validity.

Plaintiff argues that § 34a is self-executing, meaning that implementing legislation is not required in order for the provision to take effect and to be actionable. The State of Ohio opposes, and insists that, because the Ohio General Assembly enacted enabling legislation—that is, O.R.C. § 4111.14—the provision of the Ohio Constitution must not be self-executing. (Doc. 81 at 3-4). Ohio maintains that § 34a's clause that "laws may be passed to implement its provisions" means that § 34a "simply sets forth authority of the General Assembly to pass whatever legislation is necessary" to put into effect the provisions approved of by the voters in November 2006. (*Id.* at 4). Ohio relies on *Haight v. Cheap Escape Co.*, No. 2012-CV-946, 2012 WL 7808347 (Montgomery Cnty. Com. Pl. Aug. 2, 2012), the only case in Ohio to speak on this issue at the time the State filed its brief, where the Court of Common Pleas concluded, in a different context, that § 34a is not self-executing.

Ohio's argument misses the mark in at least two respects. First, since the time of filing, the Second District Court of Appeals has issued its opinion in *Haight*, wherein it reversed the trial court. It reasoned, as a part of its holding, that § 34a "did not require any action by the

14

Ohio General Assembly to implement its protections, but it provided that '[l]aws may be passed to implement its provisions and to create additional remedies, increase the minimum wage rate and extend coverage of the section, but in no manner restricting any provision of the section.'" *Haight v. Cheap Escape Co.*, 11 N.E.3d 1258, 1260 (Ohio App. 2014). The court went on to conclude that the General Assembly exceeded the scope of its authority under § 34a when it enacted legislation defining "employee" more narrowly than the term was defined by § 34a itself, and accordingly held O.R.C. § 4111.14 unconstitutional in that regard. *Id.* at 1263-64.

Second, and critically, this Court agrees with the logic of the Second District Court of Appeals—the only Ohio appellate court to consider this question—that the provision is, as a matter of constitutional interpretation, self-executing. A constitutional provision is self-executing "if it supplies a sufficient rule by means of which the right which it grants may be enjoyed and protected, or the duty which it imposes may be enforced, without the aid of a legislative enactment." *State ex rel. Russell v. Bliss*, 101 N.E.2d 289, 291 (Ohio 1951). Put another way, a clause is self-executing if it "contains more than a mere framework, and specifically provides for carrying into immediate effect the enjoyment of the rights established therein without legislative action." *In re Protest Filed by Citizens for Merit Selection of Judges, Inc.*, 551 N.E.2d 150, 152 (Ohio 1990). Section 34a creates a precise framework, describing who is entitled to minimum wages, when its terms take effect, how to enforce the rights it establishes, setting forth a cause of action, damages, and a limitations period. The fact that the General Assembly is empowered to pass legislation to "implement its provisions and create additional remedies, increase the minimum wage rate and extend coverage of the section" hardly renders § 34a non-self-executing. *Compare id.* at 104 & n.1 ("We observe that Section 1g, Article II of the Ohio Constitution, by its own language, is a self-executing provision," despite

15

the fact that "[l]aws may be passed to facilitate [its] operation, but in no way limiting or restricting either such provisions or the powers herein reserved.").

The State of Ohio's argument defies both common sense and the text of § 34a by implying that Ohio voters enacted this constitutional amendment and specified its terms, definitions, exceptions, causes of action, limitations period, and available damages, including a clause mandating that the provision "be liberally construed in favor of its purposes," and yet in fact only set forth the "authority for the General Assembly to pass whatever legislation is necessary to enforce Section 34a," not an actionable claim for relief. (Doc. 81 at 4). The Court struggles to square this reading with the plain language of § 34a and, in light of the Second District's decision, declines to adopt the State's position.

Plaintiff's Amended Complaint asserts causes of action under § 34a (Counts I, III, IX), the FLSA (Counts II, IV, VI, VII), O.R.C. § 4113.15 (Count VIII), and the OMWFSA (Count V). (Doc. 37, ¶¶ 109-144). Although the OMWFSA includes § K2, Plaintiff's Count V alleges failure to pay overtime wages, an allegation germane to O.R.C. §§ 4111.03 & 4111.10, not § 4111.14. As such, none of Plaintiff's claims implicates § K2, and its written consent requirement is therefore irrelevant to this litigation.

## IV. CONCLUSION

For the reasons states above, Plaintiff's Motion (Doc. 62) is hereby **GRANTED**. Plaintiff's request for conditional collective action certification under the FLSA is **GRANTED**; Plaintiff's request for class action certification under Fed. R. Civ. P. 23(a) & (b)(3) is **GRANTED**.

Plaintiff's Motion for Declaratory Judgment (Doc. 60) is **GRANTED** as to the inapplicability of § K2 to this case. The State of Ohio's Motion to Dismiss (Doc. 74) is

16

**GRANTED**, and Count X is **DISMISSED AS MOOT**.  Plaintiff's Motion to Strike (Doc. 82) is **DENIED AS MOOT**.

The Court hereby certifies this action as a collective action under the FLSA, and designates Plaintiff as the representative of the three plaintiff subclasses outlined above.  The Court further certifies this action as a class action under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, Art. II, Sec. 34a of the Ohio Constitution, O.R.C. §§4111.03, 4111.10, and 4113.15, and designates Plaintiff as the representative of the four plaintiff subclasses outlined above.

The Court additionally hereby designates the Law Firm of Andrew Biller, and Markovits, Stock & DeMarco, LLC, as Class Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure for the subclasses outlined above.  The Court directs Plaintiff's counsel and counsel for Defendants to meet and confer, and to provide the Court with a Proposed Plan for providing notice to the potential collective action members. The parties shall report to the Court within 30 days of this Order with such Proposed Plan.  If the parties are unable to agree on notice, separate proposed notices shall be submitted for the Court's approval by the same date.

**IT IS SO ORDERED.**

                                                _s/ Algenon L. Marbley_
                                                **ALGENON L. MARBLEY**
                                                **UNITED STATES DISTRICT JUDGE**

**DATED:  September 4, 2014**